AUGUST INGWERSEN v. HENRY RANKIN AND JOHN D. MEYER.

1. He who creates a nuisance on his own premises cannot escape liability for its continuance by demising the premises whereon the nuisance is.

2. Such liability will exist although the tenant by the demise stipulates to keep the premises in repair.

3. A landlord whose tenant during the term has created a nuisance on the demised premises will not be liable therefor so long as he has no right of entry or power to abate; but when the term expires, or the landlord may enter and abate the nuisance, he will become liable for its continuance, and that liability cannot be evaded by a renewal of the lease, though with covenants to repair and without the landlord's having taken actual possession.

*Quære.* Whether knowledge of the existence of the nuisance is necessary to establish the landlord's liability in such cases.

In case. On rule to show cause.

Argued at November Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the rule, *John Linn.*

Contra, *Wm. A. Lewis.*

The opinion of the court was delivered by

MAGIE, J. Plaintiff was tenant of defendants, under a lease which demised to him the basement of a building for the term of five years, commencing May 1st, 1876.

His suit against defendants was brought to recover damages for injuries alleged to have been suffered by him by reason of improper management of the remainder of the building. The evidence was that shortly after plaintiff's term commenced water began to flow upon the demised premises, and the flow so increased that plaintiff claimed that he was obliged to abandon them, and was thus deprived of their use for a large part

of the term. Plaintiff insisted that the water came from defects in the pipes used to distribute water though the building, and that defendants were liable therefor, either because the defective pipes were in parts of the building retained in their possession or in parts for which they were responsible.

There was evidence from which it was possible to infer that the defects existed in the pipes in a saloon above the basement. The saloon had been leased by defendants, before plaintiff's term commenced, to Owen Markey. By the lease, Markey had covenanted to keep the premises in repair. The lease expired May 1st, 1877, and just before its expiration defendants gave Markey a new lease of the saloon for a term extending beyond plaintiff's term. By that lease, Markey also covenanted to keep the premises in repair.

It therefore became necessary to instruct the jury as to the liability of defendants upon that state of facts and the inferences which could be drawn therefrom. The learned judge before whom the case was tried gave instructions in regard to defendants' liability under the lease to plaintiff, and as occupiers of such parts of the building as were retained in their possession, which instructions have not been objected to and are unobjectionable.

The objection plaintiff makes, and on which he insists that the verdict—which was for defendants—should be set aside, is directed to the following passage of the charge: " One theory upon which I understand the plaintiff to put his case is that this pipe, when the first term of Markey expired, had, by reason of Markey's negligence in the repair or not keeping in repair, got to be ruinous, and that the landlord, while such was the case, executed a new lease, granted a new term to Markey, and thus adopted as his own this condition of things in respect to this pipe. There was no actual taking possession of these premises by the landlord between the termination of the first term and the commencement of the second of Markey. Under the first term, Markey was bound to repair ; under the second term the same obligation was continued in his lease in express terms. The same duty that existed in the first term

ran on directly into the second. I do not think the expiration of the term and the reletting of the premises to the same tenant on the same conditions as to repairs, changed the defendants' liability in this case. And upon that theory I am unable to see any ground upon which the plaintiff would be entitled to recover."

Since this instruction required a verdict for defendants, if the conclusion of the jury was that the water escaped from pipes, in the saloon, which had become worn out during the first lease to Markey, it is clear that if the instruction was erroneous plaintiff may have been injured by it.

If the defective pipes were part of the premises demised to plaintiff, defendants' liability would be measured by their contract with plaintiff. But if defective pipes, located without the premises demised to plaintiff, constantly flowed water upon those premises, they constituted a nuisance for which a liability to plaintiff arose on the part of him who originally created it and of him who maintained it.

If one create a nuisance on his own premises, and thus become liable for its erection and also for its maintenance, he cannot escape the latter liability by demising the premises whereon the nuisance is. This was established in the leading case of *Rosewell* v. *Prior*, 2 *Salk.* 460 ; *S. C.*, 1 *Ld. Raym.* 713. That was an action against one who had erected a shed which stopped plaintiff's ancient lights. There had been a recovery against him for the erection, and this action was for continuance of the nuisance. The erection was by a tenant for years, who had afterward made an under-lease to one S. The question was whether, after a recovery against the first tenant for years for the erection, an action would lie against. him for the continuance after he had made an under-lease.. It was held that the action would lie upon the ground that defendant had transferred the premises with the original wrong, and this demise affirmed the continuance of it. It was also held that the action would lie against either *tenant*, at plaintiff's election.

This doctrine has been restated and developed in many

·cases, which have been said to be all reconciled ·in the proposition that where the injury is the result of the misfeasance or nonfeasance of the lessor, the party suffering damages may .sue him.    *Todd* v. *Flight*, 9 *C. B.* (*N. S.*) 377.    A distinction has been taken between the liability of the landlord and that ·of the tenant, and the former has been restricted to that which is a nuisance in its very essence and nature at the time .of letting, and not something merely capable of being rendered a nuisance by the tenant.    *Gandy* v. *Jubber*, 5 *B. & S.* 87. But there are cases which affirm the lessor's liability for a nuisance which was a necessary, contemplated or probable result of the use of the thing leased for the purposes for which it was leased.    *Fish* v. *Dodge*, 4 *Den.* 311 ; *Rex* v. *Pedley*, 1 *Ad. & El.* 822 ; *House* v. *Metcalf*, 27 *Conn.* 631 ; *Wood's Land. & Ten.*, § 639, *and cases in notes.*

Besides the above-cited cases, the following illustrate. the principle : *Nelson* v. *Liverpool Brewing Co., L. R.*, 2 *C. P.* 311 ; *Staple* v. *Spring*, 10 *Mass.* 72 ; *Saltonstall* v. *Banker*, .8 *Gray* 195 ; *Swords* v. *Edgar*, 59 *N. Y.* 28 ; *Waggoner* v. *Jermaine*, 3 *Den.* 306 ; *McCallum* v. *Hutchinson*, 7 *U. C. ·C. P.* 508.    The principle was adopted in this state by the ·Court of Errors in *Durant* v. *Palmer*, 5 *Dutcher* 544. ·

I am unable to bring my mind to the conclusion that the landlord's liability in such case will be discharged by reason ·of his having required the tenant to stipulate to keep the demised premises in repair.    Such a view seems to have been taken in *Pretty* v. *Brickmore, L.. R.*, 8 *C. P.* 401, which case ˙ was followed and approved in *Gwennell* v. *Eamer, L. R.*, 8 *C. P.* 658.    In my judgment it is impossible to reconcile those ·cases with the principle established by the leading cases or with reason.    For it is absurd to say that one who is liable for a continuing nuisance may escape that liability by merely taking a contract from another to remedy the nuisance by repairs.    The tenant cannot, either by reason of his tenancy or by reason of his contract to repair, be interposed between the person injured by the nuisance and the landlord liable therefor.    *Shearm. & R. Negl.*, § 502.    In *Swords* v. *Edgar, ubi*

*supra*, the Court of Appeals of New York disapproved of Pretty *v.* Brickmore, and by a unanimous judgment held that a lessee's 'covenant to repair would not shield the lessor from liability.

In some cases knowledge, on the part of the lessor, of the existence of the nuisance at the time of the demise is held to be an essential element of his liability. *Gwennell* v. *Eamer, ubi supra ; State* v. *Williams*, 1 *Vroom* 102. A different view was expressed by the Queen's Bench in *Gandy* v. *Jubber, ubi supra*, but as the plaintiff in that case, upon error in the Exchequer Chamber, accepted a *stet processus* on the recommendation of the court, the weight of that case may be.considered lessened.

If such knowledge is an essential element of the landlord's liability, the cases of Pretty *v.* Brickmore and Gwennell *v.* Eamer may be reconciled with the other cases. In the latter case it appears that the lessor demised in ignorance of the defect. In the former case the same ignorance may be inferred.

But it is unnecessary to determine in this case how far a knowledge, on the landlord's part, of the ruinous condition of the premises is essential to be shown to establish his liability, for it clearly appears that defendants, before making Markey's second lease, had knowledge of the injury to plaintiff, and of facts from which it could be inferred that it proceeded from defects on Markey's premises.

Nor do I perceive how the liability of the landlord in such cases will.be diminished by the fact that he renewed the tenant's lease without retaking actual possession. Such a conclusion would be opposed to the principles creating and governing his liability. If a nuisance is created during a term already existing, no liability falls on the landlord pending that term, for the reason that he has no legal means of abating the nuisance. He cannot enter upon his tenant's possession for that purpose, and would be a trespasser if he did so. But when the term expires, his right of entry and power to abate at once arise, and for that reason a liability commences. If he declines to re-enter and abate the nuisance, and relets the

premises, the liability which arose at the termination of the term will be neither discharged nor evaded.   The test of his liability in such case is his power to have remedied the wrong. If he has, but fails to exercise such power, his liability remains.

The cases seem to be uniform in this view.   *Whalen* v. *Gloucester*, 4 *Hun* 24; *Rex* v. *Pedley, ubi supra; Rich* v. *Basterfield*, 4 *C. B.* 782; *Clancey* v. *Byrne*, 56 *N. Y.* 129. In Gandy *v.* Jubber the landlord was held liable in case of a tenancy from year to year, which he could have terminated by notice, which he failed to give.

These considerations constrain me to conclude that the charge was erroneous in the respect complained of.   The rule must therefore be made absolute.