[L. A. No. 19384.   In Bank.   Dec. 28, 1945.]

JAMES BURROUGHS, Plaintiff and Appellant, v. BEN'S
AUTO PARK, INC. (a Corporation) et al., Defendants;
PACIFIC ELECTRIC RAILWAY COMPANY (a Cor-
poration), Respondent; BESSIE E. PEERY et al., De-
fendants and Appellants.

450

McLaughlin & McGinley for Plaintiff and Appellant.

Parker, Stanbury & Reese, Harry D. Parker, Peery Price and A. P. G. Steffes for Defendants and Appellants.

Frank Karr, C. W. Cornell and O. O. Collins for Respondent.

GIBSON, C. J.—Plaintiff was injured at night when he fell into an areaway adjacent to a parking lot where he had left his automobile. He sued the lessee and operator of the park, Ben Sirota and Ben's Auto Park; the owner and lessor of the parking lot, Pacific Electric Railway Company; and the owners of the adjoining property on which the areaway was situated, Bessie E. Peery and J. J. Peery. The trial resulted in a verdict in favor of the Pacific Electric Railway Company and against the other defendants. Ben Sirota and Ben's Auto Park have not appealed from the judgment entered against them. A new trial was granted the Peerys on the ground of insufficiency of the evidence and errors in law occurring at the trial. Plaintiff appeals from the judgment in favor of the Pacific Electric Railway Company and from the order granting the Peerys a new trial.

The Pacific Electric Railway property and the Peery's property faced South Olive Street in the city of Los Angeles. A concrete retaining wall twelve feet high separated the two lots

along the north line of the Peery property and the south boundary of the parking lot. The areaway into which plaintiff fell was adjacent to and extended the full length of the wall. It was a narrow passageway between the retaining wall and an eight-story hotel located on the Peerys' property and was used by the hotel as a means of ingress and egress for supplies and the removal of garbage. The top of the retaining wall was flush with the surface of the auto park, twelve feet above the floor of the areaway, and there was no guard rail or other barricade along the top of the wall. The parking lot was equipped with five floodlights, two of which were located on the south side of the park above the retaining wall. This was the condition of the property when, in January, 1940, defendant Pacific Electric Railway Company let its premises to Sirota for use as a parking lot and, except as hereinafter noted, the condition remained unchanged until the accident. The lease was for a three-year period expiring on December 31, 1942. On December 16, 1942, the lessor entered into an agreement with the lessee with respect to the continued occupancy of the premises beyond the term specified in the lease.

In November of 1942 an ordinance establishing dimout regulations in accordance with the proclamation of the Commanding General of the Western Defense Command became operative in the Los Angeles area. At the time of the accident the parking lot was illuminated by only one lamp and it appears that the light intensity at the point where plaintiff fell was less than that permitted by the ordinance.

At approximately 8 o'clock on the evening of January 28, 1943, plaintiff left his automobile at the parking lot and departed. Later an attendant parked the automobile facing north so that its rear wheels were within a few inches of the retaining wall and its rear end projected over the areaway. When plaintiff arrived at the lot at 11 o'clock the auto park was almost filled with cars which had been parked "bumper to bumper." He had never been at the parking lot prior to the evening in question and was unaware of the existence of the areaway. While two automobiles parked immediately in front of plaintiff's car were being removed by attendants, plaintiff endeavored to reach his automobile by passing behind a car parked parallel to it, and in so doing fell into the areaway and was seriously injured.

APPEAL FROM THE JUDGMENT IN FAVOR OF PACIFIC ELECTRIC
RAILWAY COMPANY.

Plaintiff contends that the court erred in giving the jury the following instruction:

"Insofar as the defendant Pacific Electric Railway Company is concerned you must determine its liability, if any, solely by considering the condition of the premises at the time [the lessee] took possession. Anything that happened after that time is immaterial as to the Pacific Electric Railway Company, and if you find that considering the construction of the premises, together with the lighting facilities furnished, the property was reasonably safe for use as a parking lot at the time it was leased, the Pacific Electric Railway Company is not liable to plaintiff and you should under such circumstances return a verdict in favor of that company, whether or not your verdict is against any other defendant or defendants."

It is urged this instruction in effect told the jury that in determining whether the Pacific Electric Railway Company was liable it should limit its consideration to the condition of the premises in January, 1940, the date the lessee first entered into possession, and that it should not have been so limited because the lessor had a right of reentry upon the expiration of the lease and was under a duty to see that the premises were reasonably safe at that time. It is further claimed that the alleged error in giving this instruction was aggravated by the failure to give other proffered instructions which would have informed the jury that they were entitled to consider the company's liability in the light of the condition of the premises at the time of the reletting.

A lessor who leases property for a purpose involving the admission of the public is under a duty to see that it is safe for the purposes intended, and to exercise reasonable care to inspect and repair the premises before possession is transferred so as to prevent any unreasonable risk of harm to the public who may enter. (*King* v. *New Masonic Temple Assn.*, 51 Cal.App.2d 512, 515 [125 P.2d 559]; *Boothby* v. *Town of Yreka City*, 117 Cal.App. 643, 649 et seq. [4 P.2d 589]; Prosser on Torts, § 81, p. 653; 123 A.L.R. 870.)  An agreement to renew a lease or relet the premises does not deprive the lessor of the right of reentry on the expiration of the old term and consequently cannot relieve the lessor of his

duty to see that the premises are reasonably safe at that time. (*Dennis* v. *City of Orange*, 110 Cal.App. 16 [293 P. 865]; *Lucas* v. *Brown*, 82 F.2d 361, 363; *McLaughlin* v. *Kelly*, 230 Pa. 251 [79 A. 552, 50 L.R.A.N.S. 305]; *Fleischner* v. *Citizens' R. E. & Investment Co.*, 25 Or. 119 [35 P. 174]; *Ingwersen* v. *Rankin*, 47 N.J.L. 18 [54 Am.Rep. 109]; see, also, 49 A.L.R. 1419.)

The lessor contends, however, that the agreement of December 16 merely extended the term and did not constitute a renewal of the lease and therefore it had no right of reentry. The understanding with respect to the future occupancy of the premises is evidenced by a letter written by the lessor to the lessee in which it is agreed that the "rental rate, as called for under lease No. 10382 which expires December 31, 1942, be revised for a three month period to a 50-50 basis and your tenancy be extended on a month to month basis under the same terms and conditions as provided in lease No. 10382. At the end of this period, the matter can again be reviewed."

A "renewal" creates a new and distinct tenancy (32 Am.Jur. 805; see, also, 1 Tiffany, Real Property (1939), 3d ed., p. 293; cf. *Morello* v. *Metzenbaum*, 25 Cal.2d 494, 500 [154 P.2d 670]), whereas an "extension" is in effect the "stretching or spreading out" of a former term (*Lang* v. *Pacific Brewing etc. Co.*, 44 Cal.App. 618 [187 P. 81]; see *Howell* v. *City of Hamburg Co.*, 165 Cal. 172 [131 P. 130]).

The agreement of December 16 provided for an extension of the *tenancy* on a month to month basis at a revised rental for a three-month period under the same terms as the lease "which expires on Dec. 31, 1942." The effect of this agreement was not merely to extend the *term* of the old lease. It created a month to month tenancy upon expiration of the old lease and, in our opinion, did not deprive the lessor of the right of reentry.

Under the facts of this case, however, it is immaterial insofar as the lessor's duty to the public is concerned whether a new tenancy was created or the old term extended. The lease did not confer upon the lessee a right or option of renewal or extension. When the lessor made the agreement of December 16, it had the right to enter when the lease expired, and it was then under a duty on the expiration date to see that the premises were reasonably safe for the purposes for which they were thereafter to be used.

■ The enactment of the dimout ordinance resulted in a change in conditions which affected the use of the property as a parking lot, and thereafter on compliance therewith the unguarded wall with a twelve-foot drop to the bottom of the areaway became an increased hazard to members of the public using the lot at night. The dimout regulations became effective prior to December 16 and were in force at the expiration of the lease and on the night of the accident. Under these circumstances, the lessor could not relieve itself of a duty imposed by law by making an agreement with the lessee whereby it waived its right to enter the premises for the purpose of performing that duty. The lessor could not thus absolve itself from liability for injuries caused by a dangerous condition which it was under a duty to correct if the property was thereafter to be used for the same or a similar purpose. (See *McLaughlin* v. *Kelly,* 230 Pa. 251 [79 A. 552, 50 L.R.A.N.S. 305]; *Ingwersen* v. *Rankin,* 47 N.J.L. 18 [54 Am.Rep. 109].) The lessor's duty is measured by the conditions as they existed at the time of its right of reentry and any legal responsibility arising from failure to discharge its duty is unaffected by the conduct of the lessee.

■ It was therefore prejudicially erroneous for the court to instruct the jury that it must determine the liability of the lessor solely by considering the condition of the premises at the time the lessee first took possession.

APPEAL FROM THE ORDER GRANTING THE DEFENDANTS
PEERY A NEW TRIAL.

Defendants Peery were granted a new trial upon the ground of the insufficiency of the evidence and errors in law occurring at the trial.

■ Plaintiff argues that the Peerys are liable as a matter of law and the trial court therefore erred in granting them a new trial on the ground of insufficiency of the evidence. It is contended that, since the Peerys knew that cars were parked on the adjoining premises in such a manner that the rear ends extended over the areaway, they participated in the operation of the auto park, and that, the jury having found against the operator of the park, the negligence of the Peerys was established as a matter of law. It does not necessarily follow, however, that the Peerys participated in the operation of the auto park merely because they knew the lessee of the park was trespassing over their property. It is clear from the record

that the issues of negligence and proximate cause involved questions of fact for the jury, and in passing upon the motion for a new trial based upon the ground of insufficiency of the evidence, it was the exclusive province of the trial court to weigh the evidence. (*Brooks* v. *Metropolitan Life Ins. Co., ante,* p. 305 [163 P.2d 689].)

In granting a new trial upon the ground of errors in law, the trial court apparently concluded it had erroneously refused the Peerys' offer to prove that the retaining wall was erected by their predecessors in title prior to 1920 and that it then extended approximately six feet above the surface of the adjoining lot; that thereafter the adjoining lot was filled by its owner until it was flush with the top of the wall. One of plaintiff's contentions is that the areaway constituted a trap and that the Peerys, as adjoining landowners, were under a duty not to maintain a dangerous condition adjacent to a public parking lot. The rejected evidence was admissible and the jury was entitled under proper instructions to consider the facts offered to be proved in determining who was responsible for creating and maintaining the dangerous condition which is alleged to have existed on the premises and whose negligence, if any, was the proximate cause of the injuries suffered by plaintiff.

We cannot say, therefore, that the court erred in granting the defendants Peery a new trial.

### CONCLUSION.

The judgment in favor of the defendant Pacific Electric Railway Company is reversed and the order granting the defendants Peery a new trial is affirmed. In view of the affirmance of the order granting the defendants Peery a new trial, their cross-appeals are hereby dismissed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—I concur in the judgment but do not join in the statement that "the lessor could not relieve itself of a duty imposed by law by making an agreement with the lessee whereby it waived its right to enter the premises for the purpose of performing that duty." Unquestionably the agreement made by the parties on December 16th was a new lease; therefore the question as to the liability of a lessor who con-

tracts prior to the date of expiration of a lease for an extension of its term is not reached in the present case. It may be noted, however, that the authorities have recognized a clear distinction between the extension and the renewal of a lease (*Howell* v. *City of Hamburg Co.*, 165 Cal. 172 [131 P. 130]; *Braun* v. *Leo G. McLaughlin Co.*, 93 Cal.App. 116 [269 P. 191]; *Lang* v. *Pacific Brewing etc. Co.*, 44 Cal.App. 618 [187 P. 81]; *Robertson* v. *Drew*, 34 Cal.App. 143 [166 P. 838]).