## MURPHY v. NAPA COUNTY.

THE effect of the proviso in the twelfth section of the Act of 1860, concerning Roads and Highways in the counties of Humboldt, Napa and Siskiyou, is to limit the power of contracting, in reference to roads and highways, to the mode there pointed out; and this limitation applies as well to the Board of Supervisors as to the overseer; and a contract made in any other manner is not binding upon the county.

The plaintiff proved that he did work and furnished materials for repairing a public bridge in Napa county, at the request of the Board of Supervisors of the county, and that the Board promised to pay him for the same; but he neither proved nor attempted to prove a compliance with the Statute of 1860 in awarding the contract: *Held*, that he was properly nonsuited at the trial.

Where the complaint averred a contract between plaintiff and the Board of Supervisors on behalf of the county, and the answer admitted a contract between the plaintiff and another on one side, and the county on the other, and averred that this was the only contract made by the county in relation to the matter, and denied that any other was made by the Board of Supervisors : *Held*, that this denial was sufficient to put the plaintiff on proof of the contract.

APPEAL from the Seventh Judicial District.

The complaint sets forth that the plaintiff in 1860, "at the instance and request of the Board of Supervisors of the county of Napa, duly authorized by law to contract on behalf of said county," performed labor and furnished materials (giving the items of each) for the county, in repairing a bridge on one of the streets of Napa City—that in consideration thereof the Board of Supervisors, on behalf of said county, promised to pay plaintiff therefor what the same was reasonably worth—that the services and materials were reasonably worth $2,059.50—and that before the commencement of this action, plaintiff presented the demand to the Board of Supervisors for allowance, who refused to allow the whole or any part of it. The complaint is verified.

The answer, also verified, is as follows:

"Now comes defendant, and for answer to plaintiff's complaint, herein denies each and every allegation therein contained, except as is hereinafter specifically admitted. And for more specific denial, denies that defendant is indebted to plaintiff in the sum of $2,059.50, as claimed in complaint, or in any other sum whatever. Defendant denies that plaintiff, at the instance and request of the Board of Supervisors of said county, performed the work and labor, and furnished the materials therefor, set out in plaintiff's complaint, or that said Supervisors ever undertook and promised to pay plaintiff therefor, as set out in complaint, or in any other manner than is hereinafter admitted and set forth.

"Defendant also denies that said Board of Supervisors ever rejected plaintiff's bill for said services, as charged in plaintiff's complaint, or in any other manner whatever. Wherefore defendant says plaintiff ought not to be permitted to further prosecute his said action, and prays that defendant may have judgment for costs herein incurred and expended. Defendant, further answering, avers that on the tenth day of May, 1860, plaintiff, and one John Williston, entered into a contract with defendant for the erection of two certain stone bridges in said county, one of which bridges is the same mentioned in plaintiff's complaint; and that by the terms of said contract, said plaintiff and Williston undertook and bound themselves to furnish the materials and erect said bridge, according to plans and specifications on file in the office of the County Clerk of said county,

and to complete the same, on or before the first day of October, 1860; and that, according to the terms of said contract, said plaintiff and Williston were to furnish the best quality of stone and other materials for said bridge, and to erect the same in a workmanlike manner, and to the satisfaction of the Board of Supervisors, or of the Superintendent to be by them appointed. That besides the contract above mentioned, no contract was made with plaintiff concerning said bridge whatever, and that the work and labor charged to have been performed by plaintiff on said bridge, is part and parcel of the labor and materials furnished and performed by said plaintiff and Williston, in their said contract, except as hereinafter set forth as follows, to wit: In rounding off the piers of said bridge, and the laying of a quantity of stone and gravel around the piers of said bridge, for which last services defendant agreed to pay said plaintiff and Williston a reasonable compensation therefor. Defendant admits that the price charged for rounding the piers of said bridge, in plaintiff's complaint, is reasonable and just. But not being advised as to the quantity of stone and gravel, if any, deposited by plaintiff, or of the value thereof, denies that plaintiff performed the services, and also that the same were worth the amount charged therefor by plaintiff, or any other sum. And defendant expressly denies that the said Board of Supervisors, or any other authorized agent of defendant, ever contracted with plaintiff therefor, except as above set forth. Wherefore, defendant avers and submits to this Honorable Court, that plaintiff ought not to be allowed further to prosecute this said action. Because defendant says that if defendant is liable to pay for the services mentioned in plaintiff's complaint, that the same is due and owing to plaintiff and Williston jointly, and not to plaintiff alone. Wherefore, defendant prays this Honorable Court for an order commanding said Williston to be made a party plaintiff herein, so that the rights of this defendant may be protected, under the terms of said contract above set forth, between plaintiff and Williston, and this defendant.

" Defendant further avers and charges, that neither the plaintiff, nor plaintiff and Williston, is entitled to recover of defendant anything for, or on account of said bridge, according to the terms of said contract: 1st. Because defendant avers that the said bridge is

still unfinished. 2d. Because the said materials and work upon said bridge were insufficient, and not in accordance with terms of said contract. 3d. Because the material used in the construction of, as well as the labor performed upon said bridge, were not satisfactory to, nor approved by the Board of Supervisors, nor by the agents of said Board, as by the terms of said contract it was expressly provided for; and 4th. Because said plaintiff and said Williston have already been paid by defendant in full, for all the work, labor and materials used and employed by them in the construction of said bridge."

The Road Law of 1860, referred to in the opinion, will be found on page forty-two, of the laws of 1860, and the twelfth section is as follows. "The Road Overseers of their respective districts shall cause all the public highways within their districts to be kept clear of obstructions and in good repair, causing banks to be graded, bridges and causeways to be made, when the same may be necessary to keep the same in good repair, and to renew them when destroyed, * * *provided,* That the building of bridges and repairing thereof, when the estimated cost exceeds fifty dollars, shall be let at public auction by the Overseer, to the lowest responsible bidder, under the direction of the Board of Supervisors, after ten days public notice posted in three public places in the district, and, when required by the Board of Supervisors, shall let any other contract for the repair of roads or bridges, as by them directed."

When the case was called for trial, plaintiff moved for a judgment in his favor, on the pleadings; which motion was overruled and exception taken by plaintiff. Plaintiff then introduced his evidence, from which it appeared that there had never been any written contract concerning the work for which the suit was brought; that plaintiff had been before the Board of Supervisors on several occasions, and conversed with them about making certain repairs on the bridge, and had been told by them to proceed and do the work and he should be paid for it; that the work was done by plaintiff, and was of the value stated in complaint; that one of the Supervisors was frequently present while the work was going on, giving directions in regard to it. It was admitted that the work was upon a public highway.

On proof of this character, plaintiff rested.   Defendant moved for a nonsuit, which was granted; and from the judgment of nonsuit plaintiff appeals.

*Hartson & Stoney*, for Appellants.

I.   The Court erred in denying plaintiff's motion for judgment on the pleadings, the material allegations of the complaint being all admitted by the pleadings.

The first denial of the answer is not good, being a *general* denial of the allegations of a *verified* complaint.   (Pr. Act, Secs. 46, 65.)

The next denial is not good, being a denial of indebtedness, and not of the "facts from which the indebtedness follows as a conclusion of law."   (*Curtis v. Richards et al.*, 9 Cal. 33.)

The other denials are all qualified denials and negative pregnants, and do not put in issue any specific fact.   (*Woods* v. *Whitney*, 21 Bar. 190; *Gas Company* v. *San Francisco*, 9 Cal. 468; *Hensley* v. *Tartar*, 14 Id. 506.)

II.   In the present case there is no question as to the Board of Supervisors, the fact that the services were rendered by plaintiff, or that the same were beneficial to the county, and actually enjoyed; for besides the admission that the work was performed on a bridge situated upon a public road, used as such by the public, the evidence shows that the work was absolutely necessary to preserve the bridge.

In *Hayden* v. *Middlesex Turnpike*, (10 Mass. R. 397) the Supreme Court of Massachusetts decided that assumpsit would lie against a corporation, when there is an express stipulation by an agent of the corporation, or a duty arising from his act or *request*, if such agent act within his authority.   (See also on same point, *Dunn* v. *The Rector of St. Andrew's Church*, 14 Johns. 117; 12 Johns. 227; 5 Wheat. 326; Parsons on Contracts, vol. 1, p. 118.)

*Edgerton & Edgerton*, for Respondent.

The plaintiff seeks to recover upon an express contract with defendant, for the performance of labor and furnishing materials. The answer denies that any such contract as that declared upon

was ever made. The answer, however inartificial and defective in other particulars, does specifically put the existence of the express contract declared upon by plaintiff in issue.

The plaintiff sought to sustain his case in the Court below by oral testimony, raising an implied contract. This was incompetent. The statute clearly defines the mode of making a contract by a Board of Supervisors, and without the observance of certain formalities required by statute, such as publishing for bids, &c., no contract entered into by a Board of Supervisors is of any validity. (See Statute of 1860, p. 46, sec. 12; Cond. R. vol. 6, p. 458; *Christopher* v. *Mayor N. Y.*, 13 Barb. 558.)

In this case there is no evidence of any contract whatever. The only competent evidence of the acts of the Board, is the record of their proceedings. (See *Taylor* v. *Henry*, 2 Pick. 307; 6 Id. 6; *Denning* v. *Roome*, 6 Wend. 651; *Wells* v. *Bartlett*, 11 Mass. 477; *State* v. *Grove*, Martin, 43; *State* v. *McAlpin*, 4 Iredell, 140.)

No record of the acts of the Board of Supervisors was introduced in this case, and the nonsuit was properly granted.

COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

The plaintiff sues to recover the sum of $2,059.50, for work done and materials furnished in repairing a bridge, and alleges that the work was done and the materials furnished at the request of the Board of Supervisors. The twelfth section of the Act of 1860, concerning roads and highways in the counties of Humboldt, Napa and Siskiyou, empowers the Road Overseer to make contracts for purposes of this character; but provides that the building and repairing of bridges, when the estimated cost exceeds fifty dollars, shall be let by him at public auction, under the direction of the Board of Supervisors, to the lowest responsible bidder, after ten days public notice, etc. The effect of this provision is to limit the power of contracting in such cases to the mode thus pointed out; and this limitation applies as well to the Board of Supervisors as to the Overseer, and a contract made in any other manner is not binding upon the county. (*Zottman* v. *City and County of San Fran-*

*cisco*, 20 Cal. 66.) The plaintiff proved a request by the Board, accompanied by a promise to pay, but neither proved nor attempted to prove a compliance with the statute in awarding the contract, and it is clear that the proof was not sufficient to recover upon. He contends, however, that he was entitled to judgment upon the pleadings, and claims that none of the allegations of the complaint are put in issue by the answer. The complaint must be understood as averring a contract in accordance with the statute, and we think the answer sufficiently denies the making of such a contract. It is awkwardly drawn, and lacks in many respects the perspicuity and precision desirable in a pleading ; but it denies in a plain and unequivocal form the making of any contract with the plaintiff. It admits a contract with the plaintiff and one Williston, and avers that this was the only contract made by the defendant in relation to the matter, and denies that the Board of Supervisors made any other. This was sufficient to put the plaintiff upon proof of the contract, and the evidence in the case did not entitle him to recover.

The judgment is affirmed.