[Civil No. 1306.   Filed December 1, 1913.]

[136 Pac. 637.]

## J. A. FARRELL, Appellant, v. COUNTY OF GREENLEE, Appellee.

1. COUNTIES—VALIDITY—MUTUALITY.—A resolution by the supervisors of a county, that plaintiff be engaged to superintend the construction of a courthouse at an agreed compensation, does not constitute a contract, but is a mere offer, and, where defendant did not agree to act as superintendent during the entire period of construction, although he entered upon the discharge of the duties, the county may dismiss him.

2. CONTRACTS—CONSTRUCTION—CONSTRUCTION OF PARTIES.—Where plaintiff acted as superintendent of the construction of a courthouse under a resolution employing him at a compensation equal to five per cent of the contract price, and both plaintiff and the supervisors construed the resolution as providing that seventy-five per cent of the compensation should become due upon the estimate of the work and material in place in the building as made by the superintendent, plaintiff, having been discharged, is entitled to recover as damages five per cent of the estimated cost of labor and material put into the building during his superintendency.

APPEAL from a judgment of the Superior Court of the County of Greenlee. F. B. Laine, Judge. Affirmed.

The facts are stated in the opinion.

Mr. L. Kearney, for Appellant.

Mr. E. V. Horton, County Attorney, and Mr. W. C. Mc Farland, for Appellee.

ROSS, J.—The appellee had let a contract for the construction of a courthouse and jail at the agreed price of $43,000. The board of supervisors employed appellant to superintend the work of construction by its resolution of date January 17, 1912, which resolution is as follows: "Upon motion of B. F. Billingsley, seconded by Geo. Webster, it was ordered that J. A. Farrell be employed to superintend the construction of the courthouse and jail at a compensation equal to five per cent of the amount of contract price (less amount already expended). Said employment of J. A. Farrell shall be effective and become of force and virtue January 17, 1912. It is further ordered that the clerk of the board notify Mr. Farrell of the above motion in writing." The appellant performed services under the resolution until February 17, 1912, when he was discharged by the board. On February 29, 1912, appellant filed his demand against the county with the board of supervisors for a breach of the contract, claiming his damages at five per cent of the contract price, less amount already in buildings. He showed in his demand that he had been paid $469.51 on account, and claimed a balance of $1,553.22. He filed this suit March 14, 1912, for the above-stated balance. The appellee, in its answer, among other things, set up a

counterclaim for $344.41, claiming that it overpaid appellant that amount in the estimate of $469.51. The court found that there was no breach of the contract when the board discharged the appellant, and also found that appellant was overpaid in the sum of $257.25. The appellant prosecutes this appeal from the judgment.

The resolution of date January 17, 1912, cannot be said to be a contract of employment. At most it is an offer of employment. "A promise is a good consideration for a promise" (1 Parsons on Contracts, 9th ed., 486); but the record fails to show that appellant promised to do anything. The complaint alleges that "the board of supervisors of said Greenlee county duly passed a resolution, wherein and whereby said county employed and entered into a contract with this plaintiff to superintend the construction of said courthouse and jail"; but there is no allegation that appellant agreed to accept such employment. In *Vogel* v. *Pekoc*, 157 Ill. 339, 342, 30 L. R. A. 491, 493, 42 N. E. 386, the court said: "It is a general rule, well understood, that a contract between parties must be mutual. *Weaver* v. *Weaver*, 109 Ill. 233; Chitty on Contracts, 15; Bishop on Contracts, sec. 78, p. 32; *Tucker* v. *Woods*, 12 Johns. (N. Y.) 190, 7 Am. Dec. 305. In the case last cited it is said: 'In contracts, where the promise of the one party is the consideration for the promise of the other, promises must be concurrent and obligatory upon both at the same time.' 1 Chitty on Contracts, 297; *Livingston* v. *Rogers*, 1 Caines (N. Y.), 584. In Chitty on Contracts, *supra*, the author says: 'The agreement, as before observed, must, in general, be obligatory upon both parties. There are several cases satisfactorily establishing that, if the one party never was bound, on his part, to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality.' In Wharton on Contracts, section 2, the author says: 'The parties to a contract, therefore, must be both bound. Supposing that, if one promises in consideration of the promise of the other, the one is not bound unless the other is bound. A promise to do a thing on an executed consideration is not a contract, nor is a promise to do a thing in consideration of an illegal or impossible engagement on the other side. Without this reciprocal obligation no contract can be constituted.'"

There is no provision in the board's resolution as to when or how appellant's compensation should be paid; but both parties construed the resolution as providing that seventy-five per cent of the compensation should become due and payable upon the estimates of work and material in place in the buildings as made by the superintendent.   The appellant so figured his compensation in his demand against the county, and it was allowed by the board of supervisors on that basis.   Thus it is seen that the contract was divisible in the sense that it had been given the practical construction by both parties as requiring partial payments upon estimates as made by the superintendent.   Therefore, the damages sustained by appellant may be reckoned as five per cent of the estimated cost of labor and material put into the building during his superintendency—from January 17 to February 17, 1912.   A finding of the court is to that effect.

The employment of appellant was evidenced by a minute entry on the records of the board of supervisors, and was a unilateral contract in that the board undertook to bind the county to employ the appellant to superintend the construction of buildings, and to pay him five per cent commission therefor; but there is nothing in the contract binding the appellant to render his services.   The complaint also alleges a unilateral contract.   There is a lack of mutuality in the contract.   The appellant did not agree to do anything.   As we have seen, the parties to it had construed it as divisible inasmuch as appellant was to be paid from time to time upon estimates made by himself as superintendent.   The appellant was not obligated by any agreement of his to remain in the service of the county until the buildings were completed, and, that being true, the county was at liberty to dispose of his service before the completion of the buildings, and a payment of his wages at the agreed price to the time of his discharge is the extent of its obligation.   The court decided that the board of supervisors, under the terms of its resolution, violated no rights of appellant in discharging him, and we conclude that the court was right.

We affirm the judgment.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Concurring Specially.—I concur in affirming the judgment; my reasons differ from those stated by the majority opinion. The action was commenced to recover for the breach of a contract of employment, and the wrongful discharge is made the cause of action. As a general rule, such actions, treating the contract of employment as continuing, may be commenced either immediately, at any time during the term, or at the expiration of the term. 26 Cyc. 1001. This action was commenced immediately. The contract of employment relied upon by the plaintiff in his complaint was made by the parties through the resolution of the board of supervisors of defendant Greenlee county January 17, 1912, acting for defendant county, and the immediate acceptance by the plaintiff of the employment. The resolution is set out in full in the majority opinion, and need not be repeated here. The resolution cannot be considered a contract; but it is clearly an offer to contract depending upon an acceptance of its terms and conditions by the offeree before it would be binding upon the county in any event. Conceding, for the present purposes, that the board of supervisors were acting within the scope of their authority to bind their principal, the county, by such a contract as offered through the resolution, when the plaintiff received that offer, and, acting upon it, assumed the duties of superintendent, he accepted the offer with all its conditions, and, if the board of supervisors knew he began the performance of such duties, the county had notice of his acceptance of the offered contract. By his commencing to perform his part of the offered contract with notice of that fact to the other contracting party before the offer was withdrawn, the plaintiff thereby promised to perform upon his part all the conditions required of him by such employment, and the offer and acceptance became a contract mutually binding upon both the parties, having for its consideration a promise for a promise. This proposition is elementary, and needs no citation of authorities in its support.

The defendant county, in its answer, admits that its board of supervisors did enter the resolution pleaded by plaintiff, whereby they undertook to employ plaintiff as superintendent of construction of its courthouse and jail, and alleges that said order and employment were illegal and unauthorized, for

the reason that E. C. Heck was then employed by defendant county as architect and superintendent of construction of its courthouse and jail, and his services had not been dispensed with, nor did the board have the authority to dispense with his services as such architect and superintendent without the consent and approval of the contractor constructing such buildings. It was admitted that plaintiff served in the capacity of such superintendent from January 17 to February 17, 1912. No defense is made to the action for the reason the contract of employment was unilateral.

Defendant sets forth a cross-complaint, alleging that defendant, on January 16, 1912, employed the plaintiff to superintend the construction of the courthouse and jail for a commission of five per cent on the value of the materials placed and labor performed in said construction, while he was in the employ of the defendant; that the duration of his employment was at the pleasure of the defendant, and the plaintiff served in that capacity to and including February 16, 1912; that during the term of his service material and labor were placed in the buildings to the value of the sum of $2,500. On February 6, 1912, plaintiff presented his demand to defendant for the sum of $469.41, claiming that sum to be three-fourths of five per cent of the value of labor and material placed in the construction of said courthouse to said date; that defendant, relying upon the correctness of the estimate made, and the correctness of the plaintiff's estimate of the commissions due him, audited and paid plaintiff said sum of $469.41; that plaintiff knew that no more than $2,500 had been expended on said buildings in labor and material at the date of his estimate; and he knew that no greater sum than $125 was due him on his commissions. A demand for judgment in the sum of $344.41 is made against the plaintiff. Plaintiff filed no answer to the counterclaim.

The judgment is that the plaintiff take nothing, and that the defendant have judgment against the plaintiff for the sum of $257.25. From which judgment the plaintiff has appealed.

The defendant, in its answer and in its counterclaim set up in its cross-complaint, treats the transaction with this plaintiff as a contract of employment. It defends upon the grounds that the board of supervisors acted without the scope

of their authority as agents for the county in making the contract; also, that the plaintiff was guilty of a breach of the contract upon his part in failing to perform the conditions of the contract; also, plaintiff was guilty of a dishonest performance of his duty under the contract in rendering a false certificate of the work and material placed in place in the buildings—any or all of which reasons appearing would justify the defendant in rescinding the contract, and justify his discharge. Defendant further alleges that when plaintiff was discharged the courthouse and jail were in course of construction, and at the date of the institution of plaintiff's action said buildings were incomplete.

The board of supervisors of a county may only act for the county within the scope of their authority as any other agent may act for his principal. The authority of the officers of a county, while acting as agents for their county, receive their instructions from the statutes, and, unlike the agent of an individual, all parties dealing with public officers, while acting as agents for the municipality, the county, or state of which they are officers, deal with such agents with notice of the limitations of the officers' authority. 11 Cyc. 468, and note 91.

The board of supervisors is given authority to erect county courthouses and jails by subdivision 9 of paragraph 973, Revised Statutes of Arizona of 1901. Their authority in this particular is limited by paragraph 986, Revised Statutes of Arizona of 1901, thus: "The board must not for any purpose contract debts or liabilities, except in pursuance to law, or under ordinances of their own, adopted in accordance with the powers herein [chapter 2, title 14] conferred."

Paragraph 976, section 49, of said chapter provides: ". . . And all erections of, repairs to and alteration in any county building exceeding in value the sum of one hundred dollars, shall be let by contract, after advertisement made for bids therefor for not less than ten days nor more than four weeks. . . . The board shall let the contract to the lowest bidder, or may reject all bids and readvertise."

Paragraph 3560 provides, where authority is given the board of supervisors ". . . to erect or cause to be erected or constructed, any . . . county or other building or structure, it shall be the duty of said . . . board of supervisors . . . to

advertise for plans and specifications in detail for said building or other structure, and to state in said advertisement the amount authorized by law or otherwise to be expended for the erection of said building or structure; and also the premium to be awarded to the architect whose plans and specifications for the same may be adopted.''

Paragraph 3561: ''Whenever the plans and specifications of any architect shall be adopted, such . . . board of supervisors, . . . so adopting the same, shall, before any premium shall be awarded for such plans and specifications, require such architect to execute and file with . . . board of supervisors . . . a good and sufficient bond, with two sufficient sureties thereto in the penal sum of five thousand dollars, to be approved by such . . . board of supervisors, . . . and conditioned that within sixty days from the date of said bond, he will, on presentment to him, enter into a contract containing such provisions and conditions as may be required by such . . . board of supervisors; . . . and also conditioned that he will give such further bond to secure the faithful performance of such contract, with such sureties as may be required of him, in the event that such . . . board of supervisors . . . should within sixty days require said architect to enter into such contract to erect such building or structure at the price named in the said advertisement to be expended for such purpose. In case said architect whose plan and specifications are adopted should enter into such contract, it shall be the duty of such . . . board of supervisors . . . to employ a competent architect or superintendent to superintend the erection of such building or structure and to see that such plans and specifications are faithfully carried out.

''3562. All contracts entered into by such . . . board of supervisors . . . in violation of the provisions of this act shall be null and void.''

Heck's plans and specifications were adopted, and, nothing to the contrary appearing, I presume the advertisement was properly made, and his premium properly awarded. Paragraph 3561 authorizes the board of supervisors to employ a competent architect as superintendent to superintend the erection of such building or structure, and to see that such plans and specifications are faithfully carried out, in only one

event—when the architect, whose plans and specifications have been adopted, has been required to and does enter into the contract to erect the buildings. No such event happened in this instance. The building contract was let to Kroeger, and not to the architect. In which event the board of supervisors had no authority to employ any superintendent to superintend the erection of the county buildings under the statutes, *supra*, and in attempting to do so they made the contract with plaintiff in violation of the provisions of such statutes, and by paragraph 3562 such contract is declared null and void.

The fact that Heck was discharged created no occasion for employing another superintendent; the county was amply protected by the bond and contract of the builder. *Greene* v. *Licking Co.*, 8 Ohio, 310.

The employment of a superintendent would directly create a liability, and no law appears authorizing such contract under the circumstances shown to exist at the time of his employment. The plaintiff did not allege nor prove that the board of supervisors provided by ordinance adopted at a regular meeting providing for the superintendent. The contract made by the board of supervisors without authority of law was not binding upon the county. *Murphy* v. *Napa County*, 20 Cal. 497.

The defendant, in its counterclaim, or cross-action, seeks to recover $344.41, alleged to have been paid to the plaintiff under mistake of fact, upon an erroneous certificate of the plaintiff as superintendent of construction, in which he estimated the value of the material and labor in the buildings and on the grounds, when the estimate should have been confined to the value of the material and labor in place in the building at the time it was made. The sum paid him was $469.41, and defendant pleads that the sum payable to him was only $125. The court adjudged that defendant recover $257.51 of the sum paid. In the first place the board of supervisors had no authority to pay plaintiff's claim based upon a void contract. Waiving the question, and, for the purpose of this branch of the action, conceding that the board had the power to and did properly audit the claim of the plaintiff, and through mistake overpaid him, the defendant was entitled to recover, upon a proper showing, the amount so overpaid. The plaintiff made no defense to this counterclaim set up against him

'by the county, as he is required to do by paragraph 1292, Revised Statutes of Arizona of 1901, if he controverts such claim. While he has made no defense, and raised no issues, and the recovery against him is for a less sum than claimed, .and no question is raised of the sufficiency of the evidence to .support the judgment upon the appeal as in this case, I will presume that the judgment of the lower court is correct. Such are the conditions of this appeal relative to this counter-·claim.

I have considered the other questions raised by appellant; 'but, as they do not affect the result, I will not extend this ·opinion by discussing them. Suffice it to say that I find no .reversible error in the record.

NOTE.—On the question of the adoption of a resolution by a public ·corporation, as initiating or consummating a contract, see note to the above case as reported in 49 L. R. A., N. S., 380.

As to the mutuality of a contract of employment which, by its terms, 'is binding upon only one of the parties for the time designated, see note ·in 20 L. R. A., N. S., 899.